IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KCI AUTO AUCTION, INC.,

    *Plaintiff,*

vs.

    Case No. 19-1138-EFM-GEB

ALONZO D. ANDERSON,

    *Defendant.*

**MEMORANDUM AND ORDER**

Over a year ago, Magistrate Judge Birzer summarized this case's history by stating, "Mr. Anderson has been trying to evade enforcement of [Plaintiff] KCI's judgment against him in the [Western District of Missouri] for five years."[1] Not much has changed since then. At the time, Defendant Alonzo D. Anderson was incarcerated for civil contempt. He still is. Nevertheless, Anderson has provided *just enough* information that the Court is now inclined to find that he has purged himself of contempt, warranting a release from custody for civil contempt.

---

[1] Report and Recommendations, Doc. 85, at 3.

I.     **Factual and Procedural Background**

This case's long and arduous history has been set forth elsewhere and does not bear repeating here except for a few pertinent details. On May 26, 2020, the Court found Anderson to be in civil contempt of Court and issued a Writ of Body Attachment. The Court further ordered that Anderson should be incarcerated until he purged himself of contempt by answering—fully, completely, and without objection—the discovery requests served upon him by Plaintiff KCI Auto Auction, Inc. ("KCI"). Finally, the Court ordered that fines in the amount of $500 per day should accrue against Anderson for each day of noncompliance.

For two years, Anderson evaded the U.S. Marshals' attempts to bring him into custody. In November 2022, they finally succeeded in finding and detaining Anderson. Since then, Anderson has remained incarcerated pending his compliance with this Court's prior order. Throughout this period, Magistrate Judge Birzer has held regular status conferences with the parties. These status conferences have been filled with tales of Anderson's evasive answers, trickery, and noncompliance with the Court's orders.

Over these two years, KCI has nevertheless obtained the following information or discovery: (1) written responses to both Plaintiff's interrogatories and requests for production; (2) identification of the ownership of his home in Tulsa, Oklahoma; (3) identification of Anderson's employment prior to his incarceration, i.e., Cortez Enterprises and Lucky 7 Pawnshop; (4) identification of other regular sources of revenue, i.e., the Boeing Pension and Social Security benefits; (5) records from Anderson's and the Lucky 7 entities' banks, i.e., Wells Fargo and City National Bank; (6) identification of the account and obtained records from Comerica Bank which provides the debit card for Anderson's Social Security benefits; (7) identification of Anderson's most significant assets in addition to his home, i.e., his share in the Estates of Jacob and Cora

Barnes; (8) identification of several cars titled in Anderson's name; (9) records from the Kansas Department of Revenue related to the sales from the Lucky 7 entities; and (10) copies of Anderson's and/or Lucky 7 Used Cars' tax returns for the period of 2013 through 2018. Judge Birzer now believes that continuing incarceration is unlikely to incentivize Anderson to produce further information.

## II. Legal Standard

"[C]ivil contempt is characterized by the court's desire to compel obedience of the court order or to compensate the litigant for injuries sustained from the disobedience."[2] Sanctions for civil contempt "may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard."[3] "A district court has broad discretion in using its contempt power to require adherence to court orders."[4] In exercising this discretion, courts may even incarcerate noncompliant parties should the circumstances warrant such extreme action.[5]

However, even incarceration for civil contempt order "is remedial, and for the benefit of the complainant."[6] Thus, a party incarcerated for civil contempt "carries the keys of his prison in his own pocket" and "can end the sentence and discharge himself at any moment by doing what

---

[2] *Ager v. Janice C. Stormont Hosp. & Training Sch. for Nurses*, 622 F.2d 496, 500 (10th Cir. 1980) (internal quotation and citation omitted).

[3] *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994).

[4] *Consumers Gas & Oil, Inc. v. Farmland Indus., Inc.*, 84 F.3d 367, 370 (10th Cir. 1996) (further citation and quotations omitted).

[5] *See Bagwell*, 512 U.S. at 840–41 (1994) (Scalia, J., concurring) (citing *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 441–44 (1911)); *see also In re Steele Cattle, Inc.*, 39 F.3d 1192 (table), 1994 WL 596627, at *2 (10th Cir. 1994) (upholding incarceration for civil contempt until debtors complied with reorganization plan).

[6] *Bagwell*, 512 U.S. at 827 (quoting *Gompers*, 221 U.S. at 441)); *see also Armstrong v. Rushton (In re Armstrong)*, 304 B.R. 432, 437 (10th Cir. BAP 2004) ("The distinction between civil and criminal contempt turns on the character and purpose of the sanction.") (further citations and quotations omitted)).

he had previously refused to do."[7] Once the defendant purges himself of contempt, any continuing imprisonment or sanction crosses the line from remedial civil contempt to criminal contempt.[8] That is because "[t]he primary purpose of a criminal contempt is to punish defiance of a court's judicial authority."[9]

## II.     Analysis

Anderson's conduct throughout this case has been fraught with deceit and evasiveness. Half-truths and lies characterize most of his response to KCI's discovery requests. Nevertheless, and despite his apparent efforts to the contrary, Anderson has revealed sufficient information—outlined above—for KCI to perform additional follow up and potentially recover their judgment. The Court agrees with Judge Birzer that keeping Anderson in custody is unlikely to elicit additional information from Anderson about his assets. Without hope of anything to be gained by keeping Anderson in custody, further incarceration serves no remedial purpose. Instead, it risks punishing Anderson for past conduct. To be sure, Anderson's consistently irreverent and deceptive conduct throughout this case could warrant a charge of criminal contempt—but that was not the original purpose of his incarceration.

Furthermore, the Court has concerns that KCI now appears more interested in documenting the deficiencies or untruths in what Anderson has provided than in following up on the valid information received. Once again, keeping Anderson in custody because of his past bad behavior would serve the purpose of a criminal contempt order—not a civil contempt order. For these

---

[7] *Gompers*, 221 U.S. at 442 (further citation and quotations omitted).

[8] *See, e.g.*, *Dartez v. Peters*, 759 F. App'x 684, 689–90 (10th Cir. 2018) (distinguishing between civil and criminal contempt).

[9] *Ager*, 622 F.2d at 499–500; *see also Gompers*, 221 U.S. at 442 (holding criminal contempt does not "undo or remedy what has been done, nor afford any compensation for the pecuniary injury caused by the disobedience").

reasons, the Court concludes that keeping Anderson in custody serves no remedial purpose. Accordingly, Anderson must be released.

       **IT IS THEREFORE ORDERED** that Anderson be **RELEASED** from custody.

       **IT IS SO ORDERED.**

Dated this 13th day of August, 2024.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE